Argued and submitted August 28, reversed November 6, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# SEAN HUNTER TALLY,
*Appellant.*

## CR990355; A111347

57 P3d 592

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals from his conviction for failure to appear in the second degree arising from his failure to appear at a probation violation hearing. ORS 162.195 (1997) (current version at Or Laws 2001, ch 517, § 3).[1] Defendant first assigns error to the trial court's denial of his motion *in limine* to exclude evidence of two release agreements that he had executed before the entry of a judgment convicting him of the underlying offense of disorderly conduct. He argues that the agreements had expired when the judgment of conviction was entered and, therefore, were not in effect when he failed to appear for the probation violation hearing. Defendant also assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that the state failed to prove that the release agreements were in effect when he failed to appear and that they were "sworn writings." ORS 135.230(9). On review for errors of law, *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999), we reverse.

The facts are undisputed. In July 1998, defendant was arrested and taken into custody for disorderly conduct. ORS 166.025. Defendant was released after he signed a release agreement requiring him to appear in court on August 4, 1998, and thereafter as ordered by the court. On September 22, 1998, defendant appeared for arraignment and signed a second, similar, release agreement. Later, defendant pleaded guilty to the disorderly conduct charge. At sentencing, the trial court placed defendant on 18 months' probation and ordered him to perform 16 hours of community service as a condition of probation. Defendant did not appeal from the judgment of conviction.

On May 4, 1999, defendant appeared on an order to show cause why his probation should not be revoked for failing to complete his community service obligation. The court postponed the hearing to give defendant a further opportunity to complete his community service. It ordered him, and he agreed, to appear again on June 8, 1999. However, defendant failed to appear on June 8. On June 27, defendant was arrested on a bench warrant.

---

[1] Unless otherwise noted, all references to statutes are to the 1997 versions.

Defendant was charged by information with failure to appear in the second degree based on his failure to appear in court on June 8.[2] At trial, the July and September 1998 release agreements were admitted into evidence over defendant's objection. An audio tape of the May 4, 1999, hearing was also admitted. A jury convicted defendant, and the trial court sentenced him to 24 months' probation.

1.      Defendant's first assignment of error concerns the proper construction of ORS 162.195. In construing that statute, we follow the methodology laid out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). ORS 162.195 provides, in part:

> "A person commits the crime of failure to appear in the second degree if, having by court order been released from custody or a correctional facility upon a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a misdemeanor or violation, the person intentionally fails to appear as required."

"The gravamen of [failure to appear in the second degree] is the violation of a release or security agreement." *State v. Eastman*, 112 Or App 256, 258, 828 P2d 484 (1992).

Neither ORS 162.195 nor any other statute in ORS chapter 162 defines "release agreement." However, release agreements fit into an overall statutory scheme, comprising ORS 135.230 to 135.295, which provides for the pretrial release of defendants in one of three ways: (1) release upon personal recognizance; (2) conditional release; or (3) security release. ORS 135.245. A defendant must sign and submit a release agreement to the court regardless of which type of release is involved. ORS 135.255; *Sexson v. Merten*, 291 Or 441, 445-46, 631 P2d 1367 (1981).

---

[2] The information in this case alleged, in part:

"The defendant, on or about 06/08/99, in the County of Umatilla and State of Oregon, having been charged with the crime of Disorderly Conduct, a misdemeanor, and having been released from custody by an order of the Circuit Court for Umatilla County upon a release agreement upon the condition that defendant would subsequently appear personally in connection with said charge, did unlawfully and intentionally fail to appear as required[.]"

The legislature has defined "release" and "release agreement" in ORS 135.230, which provides, in part:

> "As used in ORS 135.230 to 135.290, unless the context requires otherwise:
>
> "* * * * *
>
> "(8) 'Release' means temporary or partial freedom of a defendant from lawful custody before judgment of conviction or after judgment of conviction if defendant has appealed.
>
> "(9) 'Release agreement' means a sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security."

Those definitions apply to ORS 162.195 by virtue of ORS 135.255.[3] *See Eastman*, 112 Or App at 258 (construing ORS 162.195 and ORS 135.255 together).

■     In short, a "release agreement" provides the terms of "release." In turn, a "release," unless the context requires otherwise, occurs only "before judgment of conviction or after judgment of conviction if defendant has appealed." ORS 135.230(8). It follows logically that, ordinarily, a "release agreement" can encompass and apply only to the time period before entry of a judgment of conviction or after judgment if a defendant appeals.

The state remonstrates that the text of ORS 135.230(8) requires the state to fulfill *its* obligation under the release agreement—to release defendant—before judgment, but that *defendant's* obligation to appear in court does not necessarily end with the entry of judgment. The context of ORS 135.230(8), however, demonstrates that the legislature intended to limit the duration of a defendant's obligations

---

[3] ORS 135.255 provides, in part:

"(1) The defendant shall not be released from custody unless the defendant files with the clerk of the court in which the magistrate is presiding a release agreement duly executed by the defendant containing the conditions ordered by the releasing magistrate or deposits security in the amount specified by the magistrate *in accordance with ORS 135.230* to 135.290.

"(2) A *failure to appear* as required by the release agreement shall be punishable *as provided in ORS 162.195* or 162.205."

(Emphasis added.)

under a release agreement to the same time period applicable to a "release."

ORS 135.250(1) provides, in part:

"If a defendant is released before judgment, the conditions of the release agreement *shall* be that the *defendant* will:

"(a)   Appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court *until the defendant is discharged or the judgment is entered* [.]"

(Emphasis added.) ORS 135.250(3), which provides the conditions for release agreements when a defendant is released after judgment, requires a defendant to "[d]uly prosecute the appeal * * *." ORS 135.250(3)(a). The foregoing subsections thus limit a defendant's obligations under a release agreement to the same statutory time period applicable to a "release" under ORS 135.230(8), that is, to appear until judgment is entered or, if the defendant is released after judgment is entered, to appear until the appeal is completed.

■      Nor does the term "discharged" found in ORS 135.250(1) extend a defendant's obligations under a release agreement beyond the entry of a judgment of conviction in the absence of an appeal. "Discharge" has several legal meanings. Among those meanings are "dismissal of a case," "canceling or vacating of a court order," and "the release of a prisoner from confinement." *See Black's Law Dictionary* 475 (7th ed 1999). However, as used in ORS 135.250, "discharged" refers to a defendant's discharge from custody upon the dismissal of a case, *not* to a "discharge" from the sentence, as upon completion of parole, post-prison supervision, or, as pertinent here, probation. *See* ORS 135.753 ("If the court directs the charge or action to be dismissed, the defendant, if in custody, shall be discharged."); ORS 135.670(2) ("If the case is not resubmitted or refiled * * *, the defendant shall be discharged from custody * * *.").

■      The state also argues that the conditions that defendant "[s]ubmit to the orders and process of the court" and "[c]omply with such other conditions as the court may impose" in ORS 135.250(1)(b) and (c) mean that a release

agreement compels a defendant's appearance whenever the court requires it, even if a judgment of conviction has previously been entered. We disagree. ORS 135.250 does not provide that a release agreement may require a defendant to appear "whenever"; instead, subsection (1)(a) expressly limits the defendant's obligation to *appear* to the time period ending upon entry of judgment or discharge.

The state relies in part on *State v. Beirley*, 46 Or App 73, 610 P2d 1233 (1980), for the proposition that defendant's release agreements remained in effect after he was convicted and in the absence of any appeal. In that case, the defendant was convicted of burglary in the State of Washington, was incarcerated, and later was released on parole. He absconded to Oregon, where he eventually was arrested on a fugitive warrant relating to the Washington conviction. He was released "on his own recognizance," which required him to sign a release agreement under ORS 135.255. After he failed to appear in the extradition proceeding, he was indicted and convicted in Oregon for failure to appear as provided in ORS 162.205 (1977). *Beirley*, 46 Or App at 75-76. He appealed.

We concluded that the defendant was properly convicted of failure to appear because, *"for purposes of extradition,"* he was still "under" the Washington burglary charge and thus had failed to appear "in connection with a felony charge," as provided in ORS 162.205 (1977). *Beirley*, 46 Or App at 77 (emphasis added). We quoted with approval from a decision of the Connecticut Supreme Court, in which that court reasoned that " '[a] person can be said to be charged with crime as well after conviction as before. The conviction simply establishes the charge conclusively. * * * An indictment or affidavit merely *presents* the charge, while a conviction *proves* it.' " *Id.* (citing and quoting *Drinkall v. Spiegel*, 68 Conn 441, 447-48, 36 A 830 (1896)) (emphasis in original). *See also Hidalgo v. Purcell*, 6 Or App 513, 488 P2d 858, *rev den* (1971), *cert den*, 405 US 957 (1972) (a person who is convicted, placed on parole, and flees to another state is "charged with a crime" for the purposes of the Uniform Criminal Extradition Act and Article IV, section 2, of the United States Constitution).

It is significant that *Beirley*, *Drinkall*, and *Hidalgo* all pertained to extradition proceedings. Although the *Beirley* court did not so note, the Uniform Criminal Extradition Act itself expressly provided (and still provides) that persons in custody for purposes of extradition proceedings are subject to release under ORS 135.230 to 135.290. *See* ORS 133.809 (providing that, when a person is arrested pursuant to the Uniform Criminal Extradition Act, ORS 133.743 to 133.857, the judge or magistrate is required to "make a release decision concerning the person * * * under ORS 135.230 to 135.290").[4] Thus, consistently with ORS 135.230—providing that the definitions set out therein apply "unless the context requires otherwise"—the *Beirley* court in effect determined that the "context" of extradition proceedings as provided in ORS 133.743 to 133.992 "required" a different definition of release agreement from that provided in ORS 135.230. *Cf. Astleford v. SAIF*, 319 Or 225, 232-34, 874 P2d 1329 (1994) (although definition section of Workers' Compensation Law applies "[e]xcept where the context otherwise requires," court concluded that the particular context at issue in that case did not require another definition). That conclusion, however, does not assist us in deciding the question here—whether a pretrial release agreement remains in effect after conviction so as to give rise to criminal liability for failure to appear *at a probation violation hearing*.

In that regard, we note that, although neither party cited it, ORS 137.550 provides, in part:

"(3) Except for good cause shown or at the request of the probationer, the probationer shall be brought before a magistrate during the first 36 hours of custody * * *. That magistrate * * * may order the probationer held pending revocation hearing * * *. *In lieu of an order that the probationer be held, the magistrate may release the probationer upon the condition that the probationer appear* in court at a later date for a probation violation or revocation hearing. * * *

"* * * * *

---

[4] Of the three cases, only *Beirley* was concerned with release agreements. *Hidalgo* and *Drinkall* concerned whether a defendant who already has been convicted is, in the first instance, subject to extradition by reason of being "charged" with a crime.

"(8)   If a probationer fails to appear or report to a court for further proceedings *as required by an order under subsection (3) of this section, the failure to appear may be prosecuted* in the county to which the probationer was ordered to appear or report."[5]

(Emphasis added.) Although subsection (8) of ORS 137.550 does not expressly refer to ORS 162.195 or to any other specific statute, the legislature plainly intended a person who fails to appear at a probation violation hearing as ordered by the court to be subject to prosecution for failure to appear. Moreover, to the extent that an "order" under ORS 137.550(3) and (8) does not meet the definition of a "release agreement" as construed above, and therefore does not appear to satisfy the element in ORS 162.195 relating to a release agreement, that problem arguably can be resolved by determining that the "context" of a probation violation hearing "requires" that the definition in ORS 135.230 not apply.

■     We need not engage in that determination here, however, because, even assuming that an "order" to appear at a probation violation hearing as provided in ORS 137.550(3) and (8) suffices to serve as the element of a "release agreement" for the purposes of indictment and proof on a charge of failure to appear, ORS 162.195, the court's May 4, 1999, order apparently was not the basis for the state's charge or, in this case, the gravamen of its proof. It most certainly is not the focus of the state's argument on appeal. Again, we reject the state's contention that defendant properly could be convicted of failure to appear at a probation violation hearing based on evidence of his pretrial release agreements executed pursuant to ORS 135.230.

Finally, the state contends that the pretrial release agreements here were in effect during defendant's probationary period because they did not themselves provide that defendant's obligation would terminate "once the disorderly conduct trial was over." The September 1998 release agreement specifically provided that defendant agreed to appear

---

[5] In determining the proper meaning and applicability of ORS 162.195, we are obligated to consider ORS 137.550 even though the parties did not refer to it. *Miller v. Water Wonderland Improvement District,* 326 Or 306, 309 n 3, 951 P2d 720 (1998).

"for trial and all required court appearances and if convicted, * * * appear for sentencing." That phrasing appears to parallel, not vary or extend, the time limitations imposed by ORS 135.250(1). The other release agreement does not set forth any time frame for the defendant's obligation to appear. In any event, pretrial release agreements are creatures of statute, and we must construe them accordingly. As discussed above, in the absence of an appeal, a *pretrial* "release agreement," as provided in ORS 135.230, properly can encompass and apply only to the time period before a judgment of conviction is entered.

In sum, while awaiting trial on a disorderly conduct charge, defendant executed two pretrial release agreements. After being convicted of that charge, defendant did not appeal. Therefore, those release agreements were no longer in effect at the time defendant failed to appear for the probation revocation hearing. Because they were irrelevant to defendant's failure to appear, the trial court erred in denying defendant's motion *in limine* to exclude them.

■ We turn briefly to defendant's second assignment of error, in which he challenges the trial court's denial of his motion for a judgment of acquittal. In making that motion, defendant asserted that the state "failed to prove that [defendant] was released pursuant to a release agreement. A release agreement is defined in ORS 135.230, paragraph 9." Defendant did not refer the trial court to the argument that he made in support of his motion *in limine*. Instead, he argued that his pretrial release was effected pursuant to a "conditional release" rather than a release agreement, an argument that he does not renew on appeal. Accordingly, the state argues, defendant has not preserved his second assignment of error. We disagree.

In making his motion for judgment of acquittal, defendant specifically argued that the state had failed to establish that he had been released pursuant to a release agreement, as the term is defined by ORS 135.230. That reference, coupled with the specific argument supporting his motion *in limine*, was sufficient to preserve the claim of error for appeal. Not only did defendant, in making his motion for a judgment of acquittal, raise before the trial court the issue

that he raises on appeal, he also cited the correct source of statutory authority, and he previously had alerted the court to the specific argument that he makes on appeal. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (holding that the most important factor in the preservation hierarchy is whether the relevant issue was raised in the trial court, and the least important factor is whether the appellant alerted the trial court to the specific argument raised on appeal).

Finally, where we have concluded that the trial court erred in denying defendant's motion *in limine* to exclude evidence of the pretrial release agreements, and because the state did not rely on the court's May 4 order either in pleading or in proving defendant's crime, it follows that the trial court also erred in denying defendant's motion for a judgment of acquittal; without that evidence, the state failed to prove that he committed the charged crime.[6]

Reversed.

---

[6] We need not separately address defendant's argument in his second assignment of error that the release agreements were not "sworn statements" as required by ORS 135.230(9).