Argued and submitted September 4, affirmed November 20, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRISTINE DAHL,
*Appellant.*

## PR106249; A112549

57 P3d 965

Jeffrey C. Dahl argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment finding that she violated the maximum speed limit in an urban area. ORS 811.123.[1] A police photo radar unit measured the vehicle's speed and photographed the driver. To prove that defendant was the driver of the vehicle, the state relied solely on ORS 810.439(1)(b), which establishes a rebuttable presumption that the registered owner of a vehicle was its driver when a photo radar citation has been issued and delivered.[2] Defendant assigns error to the trial court's denial of her motion for judgment of acquittal, arguing that, by relying solely on that presumption, the trial court improperly shifted the burden of persuasion to her and violated her constitutional right to due process. She also contends that a witness's comment on her failure to submit a certificate of innocence pursuant to ORS 810.439(1)(c) violated her constitutional right against self-incrimination and her statutory right not to testify in a traffic violation case. We review for errors of law, *State v. Hirsch*, 177 Or App 441, 34 P3d 1209 (2001), *rev allowed*, 334 Or 288 (2002), and affirm.

---

[1] ORS 811.123(4) provides that, depending on the excess speed involved, a violation of the maximum urban speed limit can constitute any one of four degrees of traffic violation. *See* ORS 811.109. A violation is punishable only by a fine, not by incarceration. ORS 153.018.

[2] ORS 810.439 provides, in part:

"(1) Notwithstanding any other provision of law, in the jurisdictions using photo radar:

"* * * * *

"(b) A rebuttable presumption exists that the registered owner of the vehicle was the driver of the vehicle when the citation is issued and delivered as provided in this section.

"(c) A person issued a citation under this subsection may respond to the citation by submitting a certificate of innocence or a certificate of nonliability under subsection (3) of this section or may make any other response allowed by law.

"* * * * *

"(3)(a) If a registered owner of a vehicle responds to a citation issued under subsection (1) of this section by submitting a certificate of innocence within 30 days from the mailing of the citation swearing or affirming that the owner was not the driver of the vehicle and a photocopy of the owner's driver license, the citation shall be dismissed. The citation may be reissued if the jurisdiction verifies that the registered owner appears to have been the driver at the time of the violation."

The facts are undisputed. On March 2, 2000, Officer Frolov operated a photo radar unit that detected and photographed a vehicle exceeding the posted speed limit. Defendant was the only registered owner of the vehicle. Frolov saw the vehicle but did not stop it and did not identify the driver. He mailed defendant a citation for violating the maximum speed limit in an urban area.

At trial, defendant appeared by attorney, rather than in person. Frolov appeared for the state. *See* ORS 153.083. He submitted a photograph, taken by the radar unit at the time of the offense, showing the driver of the vehicle, but he did not identify the person in the photograph. On cross-examination, Frolov testified that he assumed that defendant was the driver because she did not submit a certificate of innocence pursuant to ORS 810.439(1)(c). The state offered no other evidence that defendant was, in fact, the driver. The trial court found defendant guilty and entered a judgment assessing a fine against her.

On appeal, defendant argues that the judgment in this case is, in essence, a criminal conviction. From that premise, she reasons that the conviction is invalid, because the presumption established by ORS 810.439(1)(b) supplied the sole evidence tending to prove that she was the driver, thereby impermissibly shifting the burden of persuasion to her on that issue. Next, defendant argues that, even if a civil standard for presumptions is applicable in this case, ORS 810.439(1)(b) violates due process requirements. Finally, defendant argues that the state violated her statutory and constitutional rights to remain silent when Frolov commented on her failure to submit a sworn certificate of innocence.[3]

We begin with defendant's argument that the statutory presumption of ORS 810.439(1)(b) impermissibly shifted

---

[3] Defendant also argues that, to obtain a judgment for speeding under ORS 811.123, the state must prove that a particular person was speeding, not simply that a particular person owned the vehicle at the time of the offense. The state argues that defendant failed to preserve that argument in the trial court. The record reflects that defendant raised the argument for the first time on appeal. We therefore decline to review it. *See* ORAP 5.45(4)(a); *State v. Jeffers*, 125 Or App 596, 599 n 2, 866 P2d 486 (1994).

the burden of persuasion to her. In a criminal case, the prosecution may not rely on a rebuttable presumption to prove an element of an offense. *State v. Rainey*, 298 Or 459, 465-66, 693 P2d 635 (1985); *see also* OEC 309. A different rule would improperly shift the burden of persuasion to the defendant. In civil cases, on the other hand, "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." OEC 308. Thus, in a civil action, a presumption stands unless rebutted by a preponderance of the evidence. *Lawrence v. Clackamas County*, 164 Or App 462, 468, 992 P2d 933 (1999); *see also Roach v. Jackson County*, 151 Or App 33, 38, 949 P2d 1227 (1997), *rev den*, 326 Or 389 (1998) (applying OEC 308 to the presumption in ORS 609.157 that a dog found chasing livestock where freshly damaged livestock is found is presumed to have caused the damage).

The decisive question is whether criminal or civil standards for presumptions apply in this case. ORS 153.030(1) provides that, "[e]xcept as specifically provided in this chapter, the criminal procedure laws of this state applicable to crimes also apply to violations." However, ORS 153.076(2) provides a specific exception. It requires the state to prove a traffic violation "by a preponderance of the evidence," the ordinary civil standard, rather than "beyond a reasonable doubt," the standard applied in criminal cases. Because the civil standard of proof applies and the presumption in ORS 810.439(1)(b) assists the state in satisfying that standard of proof, the civil standard logically should apply to that presumption.

■ · Defendant remonstrates that criminal standards are applicable because, even though a traffic violation is punishable only by a fine, not by incarceration, ORS 153.018, collateral consequences attach to a traffic violation judgment in the form of increased insurance premiums and more serious penalties for repeat offenses. However, defendant offers no support for the assertion that those risks rise to the level of criminal punishment. *See* ORS 153.008(2) (providing that "[c]onviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."); *cf.*

*Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 102-09, 570 P2d 52 (1977) (reviewing factors pertinent to whether an offense properly is subject to constitutional safeguards applicable to criminal prosecutions). A violation is not a crime. ORS 161.515. "The state accordingly may use rebuttable presumption to prove traffic volations." *State v. Potter*, 185 Or App 81 at 87 n 4, 57 P3d 944 (2002). Accordingly, we reject defendant's argument that criminal standards for presumptions apply in this case, and, as a consequence, we also reject her argument that ORS 810.439(1)(b) improperly shifted the burden of persuasion to her.

■     We turn to defendant's contention that, even if the civil standard for presumptions is applicable in this case, ORS 810.439(1)(b) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] In that regard, the United States Supreme Court has said:

> "The State, in the exercise of its general power to prescribe rules of evidence, may provide that proof of a particular fact, or of several facts taken collectively, shall be prima facie evidence of another fact when there is *some rational connection* between the fact proved and the ultimate fact presumed. The legislative presumption is invalid when it is *entirely arbitrary*, * * * or operates to deprive a party of a reasonable opportunity to present the pertinent facts in his defense."

*Bandini Petroleum Co. v. Superior Ct.*, 284 US 8, 18-19, 52 S Ct 103, 76 L Ed 136 (1931) (emphasis added). In *State Land Board v. United States*, 222 Or 40, 51, 352 P2d 539 (1960), *rev'd on other grounds sub nom, United States v. Oregon*, 366 US 643, 81 S Ct 1278, 6 L Ed 2d 575 (1961), the Oregon Supreme Court quoted what it called "[p]erhaps the clearest and best enunciated statement of the test of rational connection * * *":

---

[4] Defendant's argument is somewhat confused. At various points in her brief, she states that (1) "a rebuttable presumption * * * violates federal due process [if] the fact presumed * * * does not *rationally flow from the fact proved*"; (2) "only a 'rational connection' is required between the basic facts proved and the ultimate fact presumed, and the latter must be *'more likely than not' to flow from the former*"; and (3) "[ORS] 810.439(1)(b) violates due process because the statutory presumption * * * is not one that naturally and *necessarily flows from the proved fact*." (Emphasis added.) Rationality, preponderance ("more likely than not"), and necessity are not identical standards.

" '* * * Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two *in common experience*. This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case. But where the inference is so strained as not to have a reasonable relation to the *circumstances of life as we know them* it is not competent for the legislature to create it as a rule governing the procedure of courts.' "

(Quoting *Tot v. United States*, 319 US 463, 467-68, 63 S Ct 1241, 87 L Ed 1519 (1943)) (emphasis added).

We examine, then, whether the statutory presumption that the driver of a vehicle is its registered owner bears *some* rational connection to vehicle ownership. Defendant urges us to take judicial notice of several facts, including that vehicles usually have more than one key, licensed drivers outnumber registered vehicles, and vehicles commonly are borrowed or stolen, all of which indicate that vehicles are often driven by someone other than their owner. We acknowledge that vehicles often are driven by people other than their registered owners. We further recognize that many vehicles have more than one registered owner, and many vehicles are owned by corporations and other entities that are not individual persons.[5] But whether we agree that those facts provide valid alternative explanations is irrelevant. Just as we might agree that vehicles are sometimes driven by nonowners, we must also note that it is not irrational for the legislature to presume that vehicles often *are* driven by owners. Furthermore, we need not decide what facts are more likely to be true; the rational connection test does not require adoption of the best or most persuasive explanation.

In this case, we cannot say that, "in common experience," it is "entirely arbitrary" to presume that the driver of a vehicle is also its owner. The "circumstances of life as we know them" require that we accept the policy choice of the

---

[5] We specifically do not consider, in the present case, whether ORS 810.439 has any potential application to situations where a vehicle is registered to multiple owners or to a corporation or other nonindividual legal entities.

legislature. ORS 810.439(1)(b) does not create an irrational or entirely arbitrary presumption.

Finally, we address defendant's argument that Frolov's comment about her failure to submit a certificate of innocence violated her right against self-incrimination under the Fifth Amendment to the United States Constitution[6] and her statutory right not to testify under ORS 153.076(4).[7]

Although we ordinarily would begin with defendant's statutory argument, for reasons that will become apparent, we first consider her constitutional argument. That argument requires little discussion. The Fifth Amendment provides that no person "shall be compelled *in any criminal case* to be a witness against himself." (Emphasis added.) The reach of the Fifth Amendment right extends to any kind of judicial or nonjudicial procedure in the course of which the state seeks to compel testimony that may be used against the witness in a criminal prosecution. *Murphy v. Waterfront Commission of New York*, 378 US 52, 94, 84 S Ct 1594, 12 L Ed 2d 678 (1964) (White, J., concurring). However, defendant has identified no respect in which she could have been exposed to any criminal responsibility or disability in this case, whether she had testified or not. Accordingly, her constitutional right was not implicated. *See State v. Benton*, 101 Or App 386, 790 P2d 1191, *adhered to on recons*, 102 Or App 585, 795 P2d 601 (1990), *aff'd*, 311 Or 295, 810 P2d 851 (1991) (holding that civil contempt procedure under *former* ORS 161.685, *amended by* Or Laws 1991, ch 724, § 27a, did not expose the defendant to criminal liability and, therefore, did not implicate the constitutional right against self-incrimination).

We turn briefly to defendant's statutory argument. ORS 810.439 provides a defendant in a traffic violation case with an opportunity to avoid trial altogether by submitting a certificate of innocence. The defendant is free to disregard that opportunity. She may, instead, contest the charge and

---

[6] Defendant also argues that Frolov's testimony violated her privilege against self-incrimination under Article I, section 12, of the Oregon Constitution. That argument is unpreserved; therefore, we decline to consider it further.

[7] ORS 153.076(4) provides that a "defendant may not be required to be a witness in the trial of any [traffic] violation."

present a defense at trial without personally testifying. Assuming without deciding that Frolov's comment on defendant's failure to submit a certificate of innocence impermissibly infringed on her statutory right not to testify, there is no indication that the trial court relied on that testimony in making its decision. We ordinarily assume that the court, sitting as a factfinder, disregards improper comments on a defendant's silence unless the record demonstrates otherwise. *State v. McCartney*, 65 Or App 766, 768, 672 P2d 1210 (1983), *rev den*, 296 Or 638 (1984). That assumption is justified in this case.

After closing arguments, the trial court orally made the following findings and conclusions:

"All right. I make the following findings of fact that on or about March 2, the year 2000, the officer is in uniform, on duty, displaying a badge, trained in photo radar in a marked unit, patrol unit of photo radar. He's in a residential area, there are signs on all the major routes where as far as practical leading into the Portland jurisdiction where photo radar is in use. He followed a checklist according to the vendor's specifications. It was made contemporaneously with this incident. He had a visual observation log to be kept, visually identified the vehicle, a GMC approximately 1999, it was WVC313, Oregon license. It visually appeared to be speeding. Confirmed—the identification vehicle was confirmed by the officer as the one picked up by the radar as doing—it was 36 in a 25 at the signs posted saying, 'Photo radar in use,' and the sign was posted greater than 100 yards and less than 400 yards within the vehicle. There's a rear display of passing motorists' speeds on the rear of the photo radar unit. That the citation was mailed out to the registered owner of the vehicle, a Christine Dahl * * *. It was mailed out on the 10th of March. And it says within the six days—being that there is six business days, being that there were two weekend days during that period of time being the fourth and the fifth. And that the officer's testimony in all these regards is credible. I find the defendant, therefore, guilty."

The record does not reflect that the court considered in any way defendant's failure to submit a certificate of innocence.

We conclude, therefore, that defendant suffered no prejudice from Frolov's testimony.

Affirmed.