Submitted on record and briefs July 31, affirmed October 4, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# KYLE RAY CRAWFORD,
*Appellant.*

200318512; A124020

144 P3d 1073

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief
Defender, Legal Services Division, and Shawn Wiley, Deputy

Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

**BREWER, C. J.**

After pleading guilty to three counts and being tried to the court on a fourth, defendant was convicted of one count of failure to appear in the first degree, ORS 162.205; one count of felony attempt to elude, ORS 811.540; one count of reckless driving, ORS 811.140; and one count of misdemeanor attempt to elude, ORS 811.540. On appeal, he assigns error to the trial court's denial of his motion for a judgment of acquittal on the first-degree failure to appear charge. Defendant argues that, because the trial court had revoked his release agreement before the date of the alleged offense, the evidence was insufficient to support his conviction on that count. Defendant also assigns error to the court's imposition of dispositional departure sentences on the failure to appear and felony attempt to elude counts, arguing that the court improperly based the departures on facts not found by a jury or admitted by defendant as required by the United States and Oregon constitutions. We affirm.

The pertinent facts are undisputed. Defendant was arrested and taken into custody for unlawful possession of methamphetamine, a Class C felony. *Former* ORS 475.992(4)(b) (2003), *renumbered as* ORS 475.840(3)(b) (2005). On June 29, 2003, defendant was released from custody after he signed a release agreement requiring him to appear in court on July 2, 2003, and "all other dates." The release agreement required defendant to comply with other specified conditions, including that he contact the custody referee's office every Tuesday and Thursday until the final disposition of his case. The agreement "ordered [defendant] released from custody" and provided that "release [was] warranted only upon the conditions stated." The agreement also contained the following acknowledgment:

"I understand that

"• **I will be subject to arrest and revocation of my release if I fail to appear as required. If the court finds that I have violated the conditions of this release or have been charged with any new crime, my release may be revoked and a warrant may be issued for my arrest."**

(Boldface in original.) The acknowledgment was followed by a description of the penalties for the crimes of first- and second-degree failure to appear.

Defendant appeared as required for his arraignment on July 2, 2003. At that time, defendant signed a notice to return to court, confirming his understanding that he was required to appear in court again on August 6 to inform the court of the trial status of his case. On July 22, the trial court issued an order revoking defendant's release agreement and directing the issuance of a bench warrant for his arrest based on his failure to report to the custody referee's office as required by the agreement. On August 6, defendant failed to appear for his scheduled court appearance. On August 9, he was arrested and taken into custody for attempting to elude a police officer and reckless driving.

Thereafter, defendant was charged in this case with the crimes of felony attempting to elude a police officer, reckless driving, misdemeanor attempting to elude a police officer, and first-degree failure to appear based on his failure to appear in court on August 6. Defendant pleaded guilty to the first three charges, and he waived his right to a jury trial on the failure to appear charge, which was tried to the court. At the close of the evidence, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to support a conviction because the state had not shown the existence of an "active and functioning release agreement" in effect on the date that defendant allegedly committed the offense. In particular, defendant argued that, in its July 22 order, the trial court nullified the release agreement and that he therefore did not commit a crime when he failed to appear in court on August 6. The trial court denied defendant's motion and found defendant guilty of the charged offense.

■     Defendant reiterates his argument on appeal. Relying on *State v. Eastman*, 112 Or App 256, 828 P2d 484 (1992), and *State v. Tally*, 184 Or App 715, 57 P3d 592 (2002),[1] he

---

[1] In *Eastman* and *Tally*, the defendants were convicted of failure to appear in the second degree under ORS 162.195. That crime, a misdemeanor, is committed when a defendant fails to appear in connection with a misdemeanor charge rather than a felony charge. In all other respects, the text of ORS 162.195 mirrors ORS 162.205.

argues that, because the "gravamen" of the charged offense is the violation of a release agreement, it follows that there must be an "operative" release agreement in effect on the date that a defendant is alleged to have committed the offense. In defendant's view, the state "exercised its option to void the contract," and the trial court nullified the agreement by revoking it. It follows, defendant urges, that he had no obligation to appear in court on August 6 and, thus, he could not properly be convicted of failure to appear.

The state remonstrates that nothing in the text of ORS 162.205(1)(a) required proof that the release agreement remained in effect when defendant failed to appear in court on August 6, 2003. Rather, the state argues, it proved the only three elements that inhere under the statute: (1) that defendant failed "to appear as required"; (2) that he did so after having been released from custody under a release agreement; and (3) that he was released "upon the condition" that he would appear in connection with a felony charge.

■ When the facts are not in dispute, we review the denial of a motion for a judgment of acquittal for errors of law. *State v. Dahl*, 185 Or App 149, 57 P3d 965 (2002), *aff'd*, 336 Or 481, 87 P3d 650 (2004). Resolving the issue requires us to construe ORS 162.205(1)(a). We begin and end our analysis with the text and context of the statute. ORS 162.205[2] provides, in part:

"(1) A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a) Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony[.]"

There is no debate that defendant was, by court order, released from custody under a release agreement.

---

[2] Although ORS 162.205 was amended, effective January 1, 2004, to change the required mental state from "intentionally" to "knowingly," Or Laws 2003, ch 320, § 2, that amendment has no effect on our analysis in this case. We therefore refer to the current version of ORS 162.205 in this opinion.

Likewise, it is undisputed that his release was conditioned on subsequent personal appearances (on July 2, 2003, and "all other dates") in connection with a felony drug charge. Rather, the issue before us is whether the revocation of the agreement discharged, for purposes of ORS 162.205(1)(a), defendant's obligation to appear on August 6, or whether it is sufficient that he failed to appear as required by the agreement under which he was released, regardless of whether it was revoked by the court before that date.

Having framed the dispositive issue as one of statutory construction, we pause to consider a threshold issue that the parties have not addressed, that is, defendant's premise that the trial court's order revoking the release agreement in effect *nullified* that agreement. Defendant cites no authority for that proposition, and it is a dubious one. If the release agreement literally had been nullified by the court's order, then defendant arguably would be invulnerable to any legal consequence for having previously violated it. Rather, defendant appears to have used the term loosely to mean that the revocation of the agreement contractually discharged him from any ongoing obligation to comply with its requirements.

But, even that proposition is uncertain. As discussed, the release agreement contains defendant's acknowledgment that, if the trial court determined that he had violated the conditions of his release or had been charged with a new crime, "[his] release may be revoked and a warrant may be issued for [his] arrest." Although on its face the trial court's order purported to revoke the agreement, the only other substantive aspect of the order was the authorization of an arrest warrant. Under those circumstances, it is possible to infer that the trial court merely meant to revoke defendant's release—as contemplated by the agreement—as a prerequisite to the issuance of an arrest warrant, not revoke the agreement itself. Nothing in the record—apart from its use of the word "revoke"—suggests that the trial court intended to terminate defendant's ongoing obligation to comply with the agreement while he continued to enjoy the privilege of release pending the execution of the arrest warrant. For defendant to prevail on appeal, however, the trial court must have so intended. Because the state does not challenge defendant's premise, and the parties have not engaged in any

analysis of its legal foundation, we proceed to resolve the case on the issue of statutory construction on which the parties' arguments have joined.

ORS 162.205(1)(a) contains a clear temporal dimension, as evidenced by the legislature's use of the word "after" with the phrase "[h]aving * * * been released from custody * * * under a release agreement[.]" That language and verb tense indicate that the pertinent time for determining the existence of a release agreement is the time of defendant's release from custody, not the time of his alleged failure to appear. *See Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) ("The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention."). If the legislature had instead intended to require the existence of an operational release agreement at the time the offense was committed, it could easily have said so, for example, by requiring that the failure to appear occur while the defendant was "subject to" a release agreement or some similar formulation.

The prefatory language of ORS 162.205(1) also bears on the textual analysis. As noted, it requires the state to prove that defendant failed to appear "as required." Defendant contends that, because his release agreement had been revoked, he was not "required" to appear on August 6. We disagree. Consistent with our analysis above, the more logical conclusion is that the phrase "as required" refers to the defendant's obligation to appear arising from the agreement *under which he was released from custody*. That conclusion also comports with common sense. It is not logical to infer that the legislature intended for a violation of release conditions that results in the issuance of an arrest warrant to confer on the violator a free pass for future failures to appear, or future violations of release conditions, while he remains at large. Rather, it is logical to understand that, by referring to the requirements of the agreement under which the defendant was released from custody, the legislature intended to separate the privilege of release from the ongoing obligation to appear pending arrest after a defendant has violated the terms of a release agreement.

Other related statutes, and our previous construction of them, inform our inquiry but do not undermine our textual construction of ORS 162.205(1)(a). The overall statutory scheme for the pretrial release of defendants is set out at ORS 135.230 to 135.295. The terms "release" and "release agreement" are defined in ORS 135.230, which provides, in part:

"(8) 'Release' means temporary or partial freedom of a defendant from lawful custody before judgment of conviction or after judgment of conviction if defendant has appealed.

"(9) 'Release agreement' means a sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security."

Those definitions apply to ORS 162.205. *See Tally*, 184 Or App at 719 (holding that the definitions of "release" and "release agreement" in ORS 135.230 apply to ORS 162.195 by virtue of ORS 135.255[3]). ORS 135.250(1) specifies the conditions that must be included in a release agreement when, as in this case, a defendant is released before judgment. It provides, in part:

"If a defendant is released before judgment, the conditions of the release agreement shall be that the defendant will:

"(a) Appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court *until the defendant is discharged or the judgment is entered*[.]"

(Emphasis added.)

In *Tally*, we considered the proper construction of the term "discharge" as used in ORS 135.250(1)(a) to refer to

---

[3] ORS 135.255 provides, in part:

"(1) The defendant shall not be released from custody unless the defendant files with the clerk of the court in which the magistrate is presiding a release agreement duly executed by the defendant containing the conditions ordered by the releasing magistrate or deposits security in the amount specified by the magistrate in accordance with ORS 135.230 to 135.290.

"(2) A failure to appear as required by the release agreement shall be punishable as provided in ORS 162.195 or 162.205."

a defendant's discharge from custody on the dismissal of a case. 184 Or App at 720. In that case, the defendant was convicted of second-degree failure to appear after he failed to attend a probation violation hearing following his conviction for disorderly conduct. The question on appeal was whether the defendant's obligations under his pretrial release agreements extended beyond entry of the judgment of conviction. After analyzing the statutory scheme, we held that they did not. *Id.* at 724. *Tally* does not support defendant's assertion that an operative release agreement must be in effect at the time of the alleged offense to support a conviction for failure to appear. Rather, in *Tally*, we determined the outer perimeter of a defendant's obligation to appear under a pretrial release agreement and held that it did not extend beyond the entry of a judgment of conviction.

Nor is *Eastman* inconsistent with our textual analysis of ORS 162.205(1)(a). We stated in that case that "[t]he gravamen of the offense [of failure to appear] is the violation of a release or security agreement." 112 Or App at 258. Relying on that statement, defendant asserts that, to establish an actionable failure to appear, the state must show that an operative release agreement existed on the date of the alleged offense. We disagree. In *Eastman*, the defendant had signed four separate release agreements requiring him to appear—on the same date—for sentencing on five different convictions related to two incidents. The defendant failed to appear on the date specified in the agreements and was convicted of four counts of second-degree failure to appear under a previous version of ORS 165.195(1). The issue on appeal was whether the trial court had erred in imposing multiple convictions and sentences. We concluded that, although the violation of each release agreement supported a separate conviction, it was error to impose multiple sentences. 112 Or App at 259-60. We had no occasion in *Eastman* to consider the issue presented in this case.

■     In short, nothing in related statutes or our previous construction of those statutes undercuts our textual construction of ORS 162.205(1)(a). We conclude that, to support a conviction under that statute, it is sufficient for the state to prove that the defendant failed to appear as required by the

release agreement under which he was released from custody; it is not necessary to establish that the defendant remained entitled to release under that agreement on the date of the alleged offense.

Our conclusion renders the application of ORS 162.205(1)(a) to the evidence in this case straightforward. Defendant was released from custody under an agreement that required him to appear on July 2 and "all other dates." He subsequently failed to appear on one of those other required dates, namely, August 6. Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal.

In his second assignment of error, defendant argues that the trial court's imposition of dispositional departure sentences on the failure to appear and felony attempt to elude counts violated the principles articulated in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *State v. Sawatzky*, 339 Or 689, 125 P3d 722 (2005). Defendant concedes that he did not object to the sentences before the trial court, but he contends that we should treat the asserted error as one of law that is apparent on the face of the record. ORAP 5.45(1). We disagree. Under *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006), the sentences are not plainly erroneous.

Affirmed.