Argued and submitted February 21, affirmed October 9, petition for review denied December 26, 2013 (354 Or 656)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARION IVAN TAYLOR, III,
*Defendant-Appellant.*

Morrow County Circuit Court
10CR042; A147423

311 P3d 953

Alice Newlin-Cushing, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rolf C. Moan, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction for failure to appear in the second degree. ORS 162.195. He contends that the trial court erred in denying his motion for judgment of acquittal "on the basis that the security release agreement defendant signed was an unsworn statement and therefore not a 'security release' or 'release agreement' as used in ORS 162.195, failure to appear in the second degree." We conclude that the trial court correctly denied the motion for judgment of acquittal and, therefore, affirm.

When reviewing the trial court's denial of a motion for a judgment of acquittal, this court must determine whether, viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). Accordingly, we state the background facts in the light most favorable to the state.

Defendant, who was in custody on an underlying criminal charge, requested release. The court, upon review of the request, found that release on personal recognizance was unwarranted and set defendant's bail at $5,000. As part of its order, the court also set several "security release additional terms." (Capitalization omitted.) Defendant then signed a "security release" document which provided that, "[a]s conditions of [his] release from custody," defendant "promise[d] and agree[d]" (among other things) to appear in court on a particular date and time and "thereafter as ordered by the Court until discharged or final order of the Court." The security-release document also provided that defendant was required to post security of $500 in cash or cashier's check. Immediately above defendant's signature, the document contained the following statement:

> "I agree to obey the conditions above. I understand that if I violate the conditions, my release may be revoked and an arrest warrant issued. If I fail to appear, I may be charged with a new crime of contempt of court."

Several times during the course of the criminal proceedings, defendant was not present in court when his case

was called. On a number of those occasions, he appeared later on the same day or the next day. On one occasion, at a trial readiness conference set for September 2, 2010, defendant called the court and stated that he was running late. However, he did not appear in court that day. Defendant ultimately was charged with several counts of second-degree failure to appear. Because defendant was acquitted on all the charges except one, only the charge on which defendant was convicted arising out of the September 2 nonappearance is at issue on appeal.[1]

At the close of the state's case, defendant moved for a judgment of acquittal, asserting that he could not be convicted of failure to appear because the document he signed was not a "sworn writing" and, therefore, did not meet the definition of a release agreement under ORS 135.230(9). The court took the motion under advisement and then later heard additional argument on the motion. Ultimately, the court issued a letter opinion denying defendant's motion. It observed that the security-release document did "not contain any language that [it was] signed after the administration of an oath." However, it reasoned that a

"'Security Release' means a release conditioned on a promise to appear in court at all appropriate times, which is secured by cash, stocks, bonds or real property.

"In this case, * * * [the release was] conditioned on a promise to appear, secured by cash, that is, $500.00 * * *. [The document] is specifically marked as a 'security release' in the checked box in the upper right hand corner of the exhibit."

The court concluded that "a 'security release' does not require a 'sworn writing'" and because defendant "in this case posted bail and was released pursuant to [a] security release[], no 'sworn writing' was used or required."

---

[1] As to that count, the charging instrument alleged that defendant,

"on or about September 2, 2010, * * * having been charged with the crime of Assault in the Fourth Degree * * *, and having been * * * released from custody or a correctional facility *under a release agreement or security release* upon the condition that defendant would subsequently appear personally in connection with the charge, did unlawfully and knowingly fail to appear as required * * *."

(Emphasis added.)

On appeal, defendant asserts that a sworn writing was required in order for him to be convicted for second-degree failure to appear pursuant to ORS 162.195. Accordingly, in defendant's view, the trial court erred in denying his motion for judgment of acquittal. The state responds that the court correctly denied the motion because, under the statute, no sworn writing was required.[2]

The parties' arguments in this case present an issue of statutory interpretation which we resolve using the principles set forth in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). Thus, we look to the text of the pertinent statutes, in context, as well as any helpful legislative history. *Id.* at 171-72. Finally, if the statutes are ambiguous, we resolve any ambiguity by applying general canons of statutory construction. *Id.* at 172.

As noted, defendant was convicted of second-degree failure to appear pursuant to ORS 162.195. That statute provides:

"(1) A person commits the crime of failure to appear in the second degree if the person knowingly fails to appear as required after:

"(a) Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a misdemeanor; or

"(b) Having been released from a correctional facility subject to a forced release agreement under ORS 169.046 in connection with a charge against the person of having committed a misdemeanor."

---

[2] The state argues, in the alternative, that, even if it was required to "prove that defendant's written promise appeared in a 'sworn' writing, it did so." In particular, it asserts that the statutes do not require that, in order to be sworn, a writing must

"be accompanied by an oath, affirmation, or reference to perjury penalties. Instead, a written release agreement qualifies as 'sworn' if it alerts the defendant to the conditions being imposed and alerts him that a failure to comply with those conditions will produce legally sufficient consequences, and if it otherwise conveys the agreement's 'solemnity.'"

Because we conclude that a conviction for second-degree failure to appear based on a security release does not require a "sworn writing," we do not address the state's argument in this regard, and express no opinion with respect to its merit.

Although "[n]either ORS 162.195 nor any other statute in ORS chapter 162 defines" the terms "release agreement" or "security release," *State v. Tally*, 184 Or App 715, 718, 57 P3d 592 (2002), those terms are defined in ORS 135.230. That provision is part of a "statutory scheme, comprising ORS 135.230 to 135.295, which provides for pretrial release of defendants," *id.*, and its definitions "apply to ORS 162.195," *id.* at 719. Pursuant to ORS 135.230(9), "'[r]elease agreement' means a sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security." "Security release," on the other hand, is defined as "a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property." ORS 135.230(12).

In our view, the plain text of the statutes supports the trial court's conclusion that no sworn writing was required for defendant to be convicted of second-degree failure to appear based on a security release. Under ORS 162.195(1)(a), defendant could be convicted of failure to appear if he knowingly failed to appear in court as required after having been released "under a release agreement *or* security release." (Emphasis added.) And, by statutory definition, a release agreement is a sworn writing, while a security release is simply a promise to appear secured by cash (or other security). ORS 135.230(9), (12). Contrary to defendant's contention, the plain text of the pertinent statutes provides that the crime of second-degree failure to appear may be committed in alternative ways, one of which does *not* require a sworn agreement. In particular, under ORS 162.195(1)(a), a person commits the crime of second-degree failure to appear by knowingly failing to appear as required after having been released from custody or a correctional facility under (1) a sworn writing by the defendant stating the terms of the release and, if applicable, the amount of security, *or* (2) a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds, or real property. It thus appears from the plain text of the statute that, where a defendant is charged with failure to appear based on a security release, there is no requirement of a "sworn writing."

Nonetheless, based on the statutory scheme providing for pretrial release of criminal defendants, defendant argues that "both a 'security release' and a 'release agreement' require an executed release agreement, which is a 'sworn writing,' to be filed with the clerk of court, and if that has not occurred, then the elements of the failure to the appear statute have not been met." Defendant points to provisions of ORS chapter 135 to support his position that, for a conviction for failure to appear, a sworn writing is required even where a defendant's release was pursuant to a security release. In particular, he asserts that, because the statutory pretrial-release scheme contemplates that all released defendants will sign a release agreement, the term "security release" implicitly incorporates the "release agreement" requirement of a "sworn writing." Defendant's interpretation of the statute, however, would leave the alternative method of committing second-degree failure to appear in ORS 162.195—*i.e.*, by failing to appear after having been released pursuant to a "security release"—without any import. In his view, to prove second-degree failure to appear, the state would be required to prove that defendant was released under a release agreement in every case. In any event, we disagree with defendant's contention that the statutory context demonstrates that the state was required to demonstrate the presence of a release agreement in order to obtain a conviction for second-degree failure to appear.

In general, defendant is correct that ORS chapter 135 contemplates that a defendant may be released pretrial upon personal recognizance, conditional release, or security release and a defendant is expected to "sign and submit a release agreement to the court regardless of which type of release is involved." *Tally*, 184 Or App at 718; *see also* ORS 135.265(2) (a defendant released pursuant to a security release shall execute a release agreement); *Knutson v. Cupp*, 287 Or 489, 495, 601 P2d 129 (1979) (a defendant is not entitled to pretrial release without executing and filing a release agreement). However, the pretrial-release scheme's emphasis on release agreements does not require a sworn writing for a defendant to be convicted of failure to appear based on a security release. Rather, our conclusion that a sworn writing is not required for conviction is consistent with the statutory scheme.

First, ORS 135.255(1), to which defendant points in support of his position, provides:

"The defendant *shall not* be released from custody unless the defendant files with the clerk of the court in which the magistrate is presiding a release agreement duly executed by the defendant containing the conditions ordered by the releasing magistrate *or* deposits security in the amount specified by the magistrate in accordance with ORS 135.230 to 135.290."

(Emphases added.)[3] Defendant also points to ORS 135.265, which describes in detail the procedure for pretrial release on a security release. ORS 135.265 provides, in part:

"(1) If the defendant is not released on personal recognizance under ORS 135.255, or granted conditional release under ORS 135.260, or fails to agree to the provisions of the conditional release, the magistrate shall set a security amount that will reasonably assure the defendant's appearance. The defendant shall execute the security release in the amount set by the magistrate.

"(2) The defendant shall execute a release agreement and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10 percent of the security amount, but in no event shall such deposit be less than $25. The clerk shall issue a receipt for the sum deposited. Upon depositing this sum the defendant shall be released from custody subject to the condition that the defendant appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court until discharged or final order of the court."

Those sections clarify, again, that a security release is something distinct from a release agreement (discussed in ORS 135.255 and defined in ORS 135.230(9)). Although a release agreement may be required in all cases, the statutes do *not* render the term "security release" in ORS 162.195(1) (and as defined in ORS 135.230(12)) without import. Rather, the statutory scheme envisions that a defendant will both "execute

_____

[3] We note that ORS 135.255(2) provides that a "failure to appear as required by the release agreement shall be punishable as provided in ORS 162.195 or 162.205." However, that provision does not itself limit prosecution of failure to appear solely to circumstances where a defendant has violated a release agreement. It merely describes one of the circumstances that is punishable under the failure to appear statutes.

the security release" *and* "execute a release agreement." Most importantly, the statutes do not suggest any legislative intent (contrary to the plain texts of the pertinent statutes) to limit prosecution for failure to appear pursuant to a security release to circumstances where a defendant also has executed a form of release agreement that complies with the statutory definition—that is, one that is a "sworn writing." Instead, they confirm the legislature's intent that a defendant may be convicted of failure to appear based on violation of *either* a release agreement *or* a security release.

We also note that the legislative history of the pertinent statutory provisions is consistent with our understanding of the legislative intent of ORS 162.195. That statute was enacted as part of the 1971 revision of the Criminal Code. *See* Or Laws 1971, ch 743, § 195. At that time, the statute criminalized "bail jumping," providing that a person committed the crime of second-degree bail jumping "if, having by court order been released from custody or a correctional facility upon bail or his own recognizance upon the condition that he will subsequently appear personally in connection with a charge against him of having committed a misdemeanor or violation, he intentionally fails to appear as required." *Id.* The aim of that provision was

> "to punish persons who intentionally fail to appear in response to a criminal action lodged against them after having been released on bail or their own recognizance. Requiring an 'intentional' failure to appear excludes from criminal liability negligent or excusable non-appearance.
>
> "The proposed sections apply equally to those released on bail and those released on their own recognizance. An offender is not afforded a 'grace period' after default during which an appearance negatives criminal liability."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, §§ 195, 196, 197 (July 1970).

Shortly after enacting ORS 162.195, the legislature significantly revised the criminal procedure code:

"The 1973 Criminal Procedure Code and the 1971 Criminal Code were closely linked. Both codes were drafted by the Oregon Criminal Law Revision Commission, which the 1967 legislature created for the purpose of 'prepar[ing] a revision of the criminal laws of this state, including but not limited to necessary substantive and topical revisions of the law of crime and of criminal procedure, sentencing, parole and probation of offenders, and treatment of habitual criminals.' Or Laws 1967, ch 573, §§ 1, 2. The commission undertook that charge by first revising the substantive criminal laws and 'defer[ring] work on a procedural code until completion of [that] phase of the project.' Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, Forward, XXIV (1970). As soon as the commission completed its work on the substantive code in 1970 and the legislature enacted that code in 1971, the commission turned to the criminal procedure code revision. Thus, the commission's work on the procedural code was an extension of its recently completed effort on the substantive code."

*State v. Swanson*, 351 Or 286, 294, 266 P3d 45 (2011). As part of the revision of the criminal procedure code, the legislature significantly changed the old "bail" system:

"ORS 135.230 to 135.290, originally enacted as part of the revision of the Code of Criminal Procedure in 1973, set out the procedures and substantive standards for criminal defendants to be released from custody pending trial or after a judgment of conviction, if the defendant has appealed. That revision * * * adopted the term 'release' to describe a defendant's release from custody pending trial and the term 'security release' to describe release conditioned on a promise to appear in court that is secured by money or property."

*Rico-Villalobos v. Guisto*, 339 Or 197, 200 n 2, 118 P3d 246 (2005). In view of the revisions of the pretrial-release system, the terms of ORS 162.195 were also revised: "bail jumping" became "failure to appear," and the terms "release agreement" and "security release" were inserted into the statute in place of release on "bail or [a defendant's] own recognizance." Or Laws 1973, ch 836, § 343.

That history does not indicate an intent to limit the crime of failure to appear solely to circumstances where a

defendant has signed a release agreement that is sworn. Rather, the statute was amended to be consistent with the changes to the pretrial-release system. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report, §§ 600, 601, 293 (Nov 1972) (amendments provide the criminal sanctions to be imposed after a defendant is released pursuant to pretrial release provisions). Similarly, although the statute has been amended several times in the intervening years, none of those changes modified the statute in ways significant to our analysis. *See* Or Laws 1993, ch 533, § 5; Or Laws 1999, ch 1051, § 69; Or Laws 2001, ch 517, § 3; Or Laws 2003, ch 320, § 1. Throughout, "'[t]he gravamen'" of second-degree failure to appear has remained violation of a release agreement or security release. *Tally*, 184 Or App at 718 (quoting *State v. Eastman*, 112 Or App 256, 258, 828 P2d 484 (1992)). Given that a security release is defined as a release based on a "promise" to appear along with deposited security, in contrast to a release agreement, which is defined as a "sworn writing," a charge of failure to appear based on a security release requires evidence of a promise, but it need not be sworn.

In sum, we conclude that the text, context, and legislative history of ORS 162.195(1)(a) make clear that there are distinct ways that a defendant may violate the failure to appear statute. Contrary to defendant's contention, a defendant released pursuant to a security release—that is, a "release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property"—may be convicted for second-degree failure to appear without evidence of a sworn writing. In view of that conclusion, the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.